HERMAN HERZOG, Respondent, *v.* ABRAHAM STERN et al., as Executors of DAVID STERN, Deceased, Appellants.

(Argued March 1, 1934; decided May 23, 1934.)

*William M. Kurtz, James J. Mahoney* and *George J. Stacy* for appellants. The public policy of this State denies the right to recover damages for personal injuries from the estate of a deceased wrongdoer and forbids enforcement of any cause of action of such a nature purported to be created by the statute of another State. (*Loucks* v. *Standard Oil Co.*, 224 N. Y. 99; *People* v. *Martin*, 175 N. Y. 315; *Matter of Girard*, 2 How. [U. S.] 127; *Dammert* v. *Osborn*, 140 N. Y. 30; *Cross* v. *U. S. T. Co.*, 131 N. Y. 330; *Matter of Lampson*, 33 App. Div. 49; 161 N. Y. 511; *Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166; *Hegerich* v. *Keddie*, 99 N. Y. 258; *Gorlitzer* v. *Wolffberg*, 208 N. Y. 475; *Bernstein* v. *Queens County Jockey Club*, 222 App. Div. 191; *Cregin* v. *Brooklyn Crosstown Ry. Co.*, 75 N. Y. 192.) The result of enforcing the Virginia statute in this State would be to make a distribution of the deceased's property contrary to the laws adopted by this State governing such distribution. (*Matter of Killough*, 148 Misc. Rep. 73; *Clough* v. *Gardiner*,

111 Misc. Rep. 249; *Sultan of Turkey* v. *Tiryakian,* 162 App. Div. 613; 213 N. Y. 429; *Knowlton* v. *Moore,* 178 U. S. 41; *State ex rel. McClintock* v. *Guinotte,* 275 Mo. 298.)

*Sidney J. Feltenstein* and *Abraham Rosenstein* for respondent. The legal liability of appellants is controlled by the *lex loci,* and that is not varied by any considerations of local public policy under the *lex fori* by reason of the failure of the Legislature of the forum to have spoken on the subject. (*Hegerich* v. *Keddie,* 99 N. Y. 258; *Gorlitzer* v. *Wolffberg,* 208 N. Y. 475; Cons. Laws, ch. 15, § 120; *Kursa* v. *Overseas Shipping Co.,* 217 App. Div. 775; *Watkins* v. *Comm. Stevedoring Co.,* 216 App. Div. 234; *Lichtenstern* v. *Augusta-Aiken R. & El. Co.,* 165 App. Div. 270; *Clough* v. *Gardiner,* 111 Misc. Rep. 249; 194 App. Div. 923; *Domres* v. *Storms,* 236 App. Div. 630; *Matter of Killough,* 148 Misc. Rep. 73; *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99; *Kerston* v. *Johnson,* 185 Minn. 591; *Thuna* v. *Wolf,* 130 Misc. Rep. 306; *Benton* v. *Safe Deposit Bank,* 255 N. Y. 260; *Veazey* v. *Allen,* 173 N. Y. 359; *Wikoff* v. *Hirschell,* 258 N. Y. 28; *Gregonis* v. *P. & R. Coal & Ice Co.,* 235 N. Y. 152; *State of Colorado* v. *Harbeck,* 232 N. Y. 71; *Dennick* v. *Railroad Co.,* 103 U. S. 11.)

*James Marshall* as *amicus curiæ.* The person or power which negligently inflicts injury upon another shall be held responsible to the injured party. The mere fact that no statute of identical coverage exists as part of the law of the forum will not prevent the enforcement of a transitory cause of action arising in a foreign jurisdiction under a foreign statute. (*Loucks* v. *Standard Oil Co.,* 224 N. Y. 99; *Fitzpatrick* v. *International Ry. Co.,* 252 N. Y. 127; *Young* v. *Masci,* 289 U. S. 253; *Sheldon* v. *Haxtun,* 91 N. Y. 124; *Manhattan Life Ins. Co.* v. *Johnson,* 188 N. Y. 108; *Domres* v. *Storms,* 236 App. Div. 630; *Salimoff & Co.* v. *Standard Oil Co.,* 262 N. Y. 220; *Orr* v.

*Ahern*, 107 Conn. 174; *Chubbuck* v. *Holloway*, 182 Minn. 225; *Powell* v. *Great Northern Ry. Co.*, 102 Minn. 448.)

LEHMAN, J. Though the cause of action created in Virginia is not penal in its nature and its enforcement does not offend our sense of justice or menace the public welfare, it by no means follows that the cause of action is enforceable against the executors of the wrongdoer. True, the foreign statute provides that such a cause of action shall not abate by the death of the wrongdoer, and the general rule is that " whether a claim for damages for a wrong survives the death of the wrongdoer or of the injured person is determined by the law of the place of wrong." (Proposed Final Draft No. 3 of the Restatement of the Law of Conflict of Laws by the American Law Institute, § 426.) (Cf. *Orr* v. *Ahern*, 107 Conn. 174; *Friedman* v. *Greenberg*, 110 N. J. L. 462.) The question, however, is not whether the cause of action created by the laws of the State of Virginia survives the death of the wrongdoer, but whether the law of this State permits the representative of the deceased wrongdoer to be sued on such a claim.

On that question the comment upon the general rule contained in the proposed draft is illuminating. " If a claim for damages for injury survives by the law of the place of wrong, recovery may be had upon it by or against the representative of the deceased party, provided the law of the state of suit permits the representative of the deceased party to sue or be sued on such a claim. Without such power created by the law of the state of suit, no recovery can be had."

This State has undoubted power to determine the devolution of the property of a deceased resident and how such property shall be administered. It determines upon what claims a suit may be brought against the representatives of the decedent, and payment be enforced out of the assets of the estate. A transitory cause of action may constitute a property right. It may even be regarded as a vested right against the wrongdoer. There can,

however, be no vested right to enforce a claim for damages out of the property of a deceased resident of this State unless there is a law which permits the property of such a decedent to be applied upon the claim. At common law a claim for personal injury did not survive and could not be enforced out of the property or against the personal representatives of the deceased wrongdoer. The common law has in this regard not been changed by the Legislature. Indeed, the Legislature has expressly provided that "For wrongs done to the property rights or interests of another for which an action might be maintained against the wrong-doer, such action may be brought by the person injured, or after his death, by his executors or administrators, against such wrong-doer, and after his death against his executors or administrators, in the same manner and with the like effect in all respects, as actions founded upon contracts. This section shall not extend to an action for personal injuries, as such action is defined in section thirty-seven-a of the General Construction Law, except that nothing herein contained shall affect the right of action now existing to recover damages for injuries resulting in death." (Decedent Estate Law [Cons. Laws, ch. 13], § 120.) It is not without significance that this provision has been inserted in the Decedent Estate Law intended to govern the devolution and administration of property within this State belonging to residents of this State. The Legislature has not merely failed to provide, as many other States have done, that causes of action for personal injury shall survive the death of the wrongdoer, but the Legislature, though it has affirmatively provided for the prosecution of some causes of action against the executors and administrators of a wrongdoer after his death, has expressly refused to sanction causes of action for personal injury against such executors or administrators. Where neither common law nor a statute permits the bringing of an action against executors or administrators of a

deceased resident, the courts of this State are without jurisdiction to pass upon such a cause of action. There is here no room for speculation as to whether the cause of action against the representatives of the deceased wrongdoer created by the laws of the State of Virginia offends our public policy. The rights and obligations of executors and administrators appointed by our courts are defined by our law, and our courts are without jurisdiction to grant a judgment binding on the executors or administrators appointed here unless our law makes provision for such actions against executors and administrators. Each State may define the rights and obligations of those who come within its territorial bounds, and comity will ordinarily cause the sister States to permit the enforcement of such rights and obligations against their residents by resort to their courts, but no State has any power to provide that such rights and obligations may be enforced out of the property of a deceased wrongdoer in the possession of executors or administrators appointed by the courts of another State. Here comity does not determine the jurisdiction of the courts of the decedent's domicile. The courts are without jurisdiction, because neither common law nor statutory law provides for the maintenance of any action for personal injury against the executors or administrators of a deceased wrongdoer. ·

The result would not, however, I think, be different if the question were really one of comity, for comity depends upon the public policy of the State, and the Legislature has declared the public policy of this State when it provided that no action for personal injuries may be maintained against the executors or administrators of a decedent who resided in this State. A rule that would permit the depletion of the estate of a deceased resident through enforcement of claims for damages for personal injuries sustained outside of the State, where the Legislature has denied such remedy for injuries within the State, seems to me unreasonable and sustained by no

authority outside of the Minnesota cases cited by Judge HUBBS. There is nothing said or decided in the case of *Loucks* v. *Standard Oil Co.* (224 N. Y. 99) which supports such holding.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division. The second certified question should be answered in the negative and the other questions not answered.

HUBBS, J. (dissenting). This is an action to recover damages caused by appellants' testator in negligently causing personal injury to respondent in an automobile accident which occurred in the State of Virginia. At the time both were residents of this State. Appellants' testator thereafter died while a resident of this State and his last will was probated in this State and appellants duly qualified as executors thereof.

The complaint alleges that a statute of the State of Virginia provides that an action to recover damages under such circumstances survives the death of a wrongdoer and is maintainable against his personal representatives. If the accident had happened in this State, a cause of action would not survive the death of the alleged tort feasor.

The sole question present is whether the courts of this State will enforce the cause of action given by the statute of Virginia against the representative of the estate of the deceased. The exact question has never been passed upon by this court. There are conflicting decisions in the Appellate Divisions. The Fourth Department, in *Domres* v. *Storms* (236 App. Div. 630), has decided that the action is maintainable. The opposite conclusion was reached in the Second Department in *Clough* v. *Gardiner* (194 App. Div. 923) and by the Surrogate in *Matter of Killough* (148 Misc. Rep. 73).

The alleged wrongful conduct of appellants' testator created a cause of action in favor of the respondent in

Virginia. That cause of action is not penal in its nature. It constitutes a transitory cause of action and a property right which will be enforced by the courts of this State unless such cause of action is contra to our public policy and "in its nature offends our sense of justice or menaces the public welfare." (*Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 110.)

The principle was stated by Chief Justice WHITE in *Bond* v. *Hume* (243 U. S. 15, 21): "It is elementary that the right to enforce a foreign contract in another foreign country could alone rest upon the general principles of comity. But elementary as is the rule of comity, it is equally rudimentary that an independent state under that principle will not lend the aid of its courts to enforce a contract founded upon a foreign law where to do so would be repugnant to good morals, would lead to disturbance and disorganization of the local municipal law, or in other words, violate the public policy of the state where the enforcement of the foreign contract is sought." It is undoubtedly true that courts will not enforce foreign causes of action when to do so would be contrary to the public policy of the forum. It is not every difference upon some debatable question of State policy between the law of the forum and the law of the foreign State creating the cause of action which will justify a refusal to enforce the cause of action in the forum. "There is a growing conviction that only exceptional circumstances should lead one of the states to refuse to enforce a right acquired in another." (*Loucks* v. *Standard Oil Co., supra,* at p. 113.) That is particularly true in cases where the cause of action arose in a sister State rather than in a foreign country.

More than one-half of our sister States which were formerly governed by the rule of the common law, that such an action did not survive, now have statutes similar to that of Virginia. To refuse to enforce a vested right created by such a statute of one of those sister States

upon the ground that its enforcement would be "repugnant to good morals, would lead to disturbance and disorganization of the local municipal law," or that such a statute "in its nature offends our sense of justice or menaces the public welfare," would constitute an assumed virtue and superiority which cannot be justified and which we should at least hesitate to announce.

The desirability of a close union of the States and the enforceability of the laws of each in every other is evidenced by the full faith and credit clause of the Federal Constitution. We conceive the controlling public policy to be that the courts of each State shall give effect to all valid causes of action created by the laws of another State except possibly in extreme cases when to do so would, in the words of former Chief Judge CARDOZO, "offend our sense of justice or menace the public welfare."

Under our common law, this cause of action would not survive the death of the tort feasor. By section 120 of the Decedent Estate Law it is provided that certain tort actions affecting property shall survive and may be maintained against the personal representative of the wrongdoer. It also provides: "This section shall not extend to an action for personal injuries."

Personal injury, as defined by section 37(a) of the General Construction Law (Cons. Laws, ch. 22), includes an "injury to the person either of the plaintiff, or of another." (*Hegerich* v. *Keddie*, 99 N. Y. 258.)

The section had the effect of changing the common law governing the survival of actions for wrongful injury to property, but did not change the rule in regard to the survival of a cause of action to recover damages for wrongfully causing the death of a person.

Does the fact that to that extent we retain the rule of the common law prevent our courts from giving effect to the statute of Virginia which has changed that rule? We think not. We recognize the fact that the courts of certain States entertain a different view and insist upon

similarity of statutes. The current of authority favors the enforcement in courts of the forum of vested rights acquired in a foreign State. (26 Mich. Law Review, 439; 18 Cornell Law Quarterly, 432, 434; 12 Minnesota Law Review, 289; *Walsh* v. *N. Y. & N. E. R. R. Co.*, 160 Mass. 571; Beach, Uniform Interstate Enforcement of Vested Rights, 27 Yale Law Journal, 656; *Loucks* v. *Standard Oil Co.*, *supra; Rick* v. *Saginaw Bay Towing Co.*, 132 Mich. 237.)

" The tendency of modern decisions is toward a broader comity in the enforcement of rights created by the legislatures of sister states." (*Brown* v. *Perry*, 104 Vt. 66; 77 A. L. R. 1294.)

" We are not at liberty to refuse the enforcement of the foreign law in order to suit our own view of what is fair and right under the stated circumstances. Our courts ' do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.' " (*Reilly* v. *Pepe Co.*, 108 Conn. 436, 446.)

" We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." (*Loucks* v. *Standard Oil Co.*, *supra*, at p. 111.)

The fact that there is no statute upon the subject in the forum and that the common law does not afford a remedy does not justify the courts of the forum in refusing to enforce a right acquired in a sister State. (*Loucks* v. *Standard Oil Co.*, *supra; Huntington* v. *Attrill*, 146 U. S. 657; *Northern Pacific R. R. Co.* v. *Babcock*, 154 U. S. 190, 196; *Herrick* v. *Minn. & St. L. R. R. Co.*, 31 Minn. 11; *Powell* v. *Great Northern Ry. Co.*, 102 Minn. 448, 452; *Thompson* v. *Taylor*, 66 N. J. L. 253; *Rick* v. *Saginaw Bay Towing Co.*, *supra.*)

" Therefore we may lay on one side as quite inadmissible the notion that the law of the place of the act may be resorted to so far as to show that the act was a tort, and

then may be abandoned, leaving the consequences to be determined according to the accident of the place where the defendant may happen to be caught." (*Slater* v. *Mexican Nat. R. R. Co.*, 194 U. S. 120, 126.)

The question involved in the case at bar came before the court in *Chubbuck* v. *Holloway* (182 Minn. 225; revd. on another ground on reargument, 182 Minn. 231). It was decided on a factual situation almost identical with the facts in this case, that the courts of Minnesota should enforce against the personal representative of a deceased wrongdoer a cause of action given by a statute of Wisconsin, although to grant such remedy was contra to the law of the forum. The principle announced was reaffirmed in *Kertson* v. *Johnson* (185 Minn. 591). (Cf. *Orr* v. *Ahern*, 107 Conn. 174; *Friedman* v. *Greenberg*, 110 N. J. L. 462.)

We believe the decision of the Minnesota court expresses the correct principle and is in accord with the modern view. The respondent suffered an injury as a result of the wrongful act of appellant's testator. The law should afford a remedy for the wrong suffered. The statute of Virginia affords such remedy. We do not find that the public policy of this State requires us to close the doors of our courts on the respondent and refuse to help him enforce the right given him by the law of the place of injury. While the statute of Virginia is not the law of this State, it does give rise to an obligation which we should carry out. (*Slater* v. *Mexican Nat. R. R. Co.*, supra; *Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473, 478.)

The first two questions certified should be answered in the affirmative, the third in the negative and the order affirmed, with costs.

CRANE, O'BRIEN and CROUCH, JJ., concur with LEHMAN, J.; HUBBS, J., dissents in opinion in which POUND, Ch. J., concurs.

Ordered accordingly.